Filed 4/28/21  Dickerson v. Perry & Papenhausen, Inc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| WILLIAM DICKERSON et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PERRY & PAPENHAUSEN, INC. et al., <br><br> Defendants and Respondents. | D076080, D076471 <br><br><br> (Super. Ct. No. 37-2009-00088289-CU-CD-CTL) |
| WILLIAM DICKERSON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PERRY & PAPENHAUSEN, INC., <br><br> Defendant and Appellant. | |

APPEALS from a judgment and order of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Procopio, Cory, Hargreaves & Savitch and Kendra J. Hall for Plaintiffs William Dickerson and Paradiso in Terra, LLC.

Schwerdtfeger Law Group, Sean D. Schwerdtfeger, Catherine L. Coughlin and Sarah K. Richards for Defendants Perry & Papenhausen, Inc.,

James Papenhausen, James Papenhausen, II, Papenhausen Construction, and Frederick Perry, Jr.

This is the second round of appeals arising from the allegedly defective construction of William Dickerson's home by general contractor Perry & Papenhausen, Inc. (P&P), and the decidedly complicated litigation that followed. Dickerson and Paradiso in Terra LLC (Plaintiffs) sued P&P and others (Defendants),[1] as well as their subcontractors; Dickerson alleged breach of contract and both Plaintiffs asserted negligence, among other claims. Plaintiffs settled with the subcontractors. Defendants filed a cross-complaint, claiming Dickerson breached the home construction contract by failing to pay certain amounts. A jury found Dickerson and P&P liable for breach of contract, and P&P liable for negligence, and awarded damages to both sides. The contract award to Dickerson was for delays and overcharging. Although the special verdict form submitted to the jury allowed for defect damages to be awarded in contract, the jury awarded them only on the joint negligence claim. P&P successfully moved to offset the negligence award by the subcontractor settlements to zero. Dickerson moved to correct this offset and to elect to receive the defect damages in contract. The trial court granted the remedy election, deemed the correction motion moot, and entered judgment, which still stated the negligence award was offset to zero.

---

[1]    The other defendants are P&P principals Frederick Perry, Jr., James Papenhausen, and James Papenhausen II, and Papenhausen Construction. Dickerson's wife, Heidi Dickerson, was also a party, but successfully demurred to a breach of contract claim and dismissed her own claims.

In the first appeal, we reversed the remedy election because the jury's special verdict did not support it, and remanded for further proceedings as the trial court determined were necessary and proper for judgment. We affirmed the judgment in all other respects. On remand, Plaintiffs moved to correct the settlement offset, for a new trial, and for judgment notwithstanding the verdict (JNOV). The court concluded our remittitur deprived it of jurisdiction for the motions and denied them. P&P moved for prevailing party status under Civil Code section 1717, which the court denied after finding there was no prevailing party. Plaintiffs appeal from the judgment after remittitur, and the parties separately appeal from the order on prevailing party status.[2]

We conclude the trial court properly determined our remittitur did not provide jurisdiction to address Plaintiffs' motions. We further conclude the court did not abuse its discretion by determining there was no prevailing party. The judgment and order are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND[3]

I. <em>Litigation Through Trial</em>

Dickerson entered into a contract with P&P to build the home in 2005, formed Paradiso in Terra LLC (Paradiso) in 2008, and at some point transferred ownership of the home to Paradiso. Plaintiffs filed suit against Defendants in 2009, and later added the subcontractors. The operative

---

[2]    On our own motion, we consolidate the appeals for purposes of decision. (See *Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 481, fn. 1.)

[3]    We provide additional background in our discussion of the prevailing party determination, *post*. We also grant the parties' requests to incorporate the record in the prior appeal by reference.

complaint included claims by Dickerson against P&P for breach of contract and breach of implied warranty, and a joint claim by Plaintiffs for negligence against Defendants and the subcontractors. There were also claims for fraud and negligent misrepresentation. Defendants filed a cross-complaint, which included a breach of contract claim against Dickerson for failure to pay certain amounts owed under the terms of the construction contract.

The matter proceeded to trial in 2014. The trial court first held a bench trial to address Plaintiffs' claim that P&P did not comply with certain licensing requirements, which would preclude their failure-to-pay claim. The court found P&P substantially complied.

The case was then tried to a jury. At the outset, Plaintiffs' counsel indicated they had settled with the remaining subcontractors; identified additional settlement amounts totaling $500,000; and raised the issue of whether Defendants would object to the good faith settlements. Defendants' counsel indicated he could not make the decision at that time, noting in part that claim assignments needed valuation. On the allocations, counsel said, "So if what I'm hearing, $500,000, and . . . $300,000 is allocated over the concrete issues, $180,000 is allocated over the waterproofing issues, and $20,000 is allocated over to the tile issues." Additional discussion ensued, during which the court confirmed the total subcontractor settlements were over $900,000. The court also addressed the claims, and encouraged the parties to address issues concerning ownership of the home; it appears no steps were taken, and no evidence was introduced to the jury as to when title transferred to Paradiso.

After the close of evidence, the parties agreed Paradiso would only be a party on the joint negligence claim. The special verdict form provided to the jury listed substantially similar, but not identical, defects under Dickerson's

4

contract claim and the Plaintiffs' joint negligence claim. The jury was instructed "each item of damages may be awarded only once," and Dickerson argued in closing that the amounts would be "offset and . . . figured out."

The jury returned its special verdict. It found Dickerson established a breach of contract and awarded damages of $160,000 for delays and overcharging, but indicated "0" for each defect category. It found Dickerson and Paradiso established negligence and awarded $675,428.02 for defect damages. The jury also found Dickerson liable to P&P for breach of contract and awarded damages of $535,000.

## II. *Posttrial Proceedings*

In 2015, Defendants moved to set off the negligence award under Code of Civil Procedure section 877 by the subcontractor settlements, which exceeded $972,000.[4] The trial court granted the motion, reducing the negligence award to zero based on the settlements, and also offset the contract awards. During the hearing, the court and counsel discussed the settlements at length. Defendants' counsel argued the plaintiff has the burden to explain allocations and there were none, stating: "We found three total allocations. And [they] really are rather meaningless . . . because, for the most part, all those issues went forward . . . ." The court appeared to agree with this burden analysis:

> "My understanding of the law is, if you don't have a specific
> allocation, the full amount is credited to the nonsettling party,
> period. It's—it may not be fair in every case. It may not be a
> good idea. But that's what the cases say. And that's the way it
> works."

---

[4] The parties identify differing total subcontractor settlement amounts, but the specific number is not material to our analysis. There is no dispute settlement amounts exceeded $972,000.

5

The court subsequently stated to Plaintiffs' counsel:

> "[I]f there was an allocation, you can—let's go forward assuming there wasn't, for purposes now. I'm not going to sign any judgment today. [¶] So if something was said on the record, that there was an allocation for this and that, and then there was a stipulation that was in good faith, then I would revisit this. But I don't remember.

> [¶] . . . [¶]

> "[Y]ou need to go back, then. And if—if there was an allocation, that would change the numbers."

After Plaintiffs obtained new counsel, they applied ex parte for correction of setoffs and to elect to receive defect damages in contract. The trial court granted the remedy election request, and deemed the correction request moot.

The trial court then entered judgment. The court set forth the jury's special verdict findings, indicated it granted Dickerson's remedy election, and stated the judgment was as follows, in pertinent part:

> "In favor of [Dickerson] and against [P&P] on [his] breach of contract claim in the amount of $704,849.00. By operation of Code of Civil Procedure section 666, [his] recovery on his contractual award is reduced to $169,849.00, by virtue of the jury's finding that [P&P] is entitled to $535,000.00 on its Cross-Complaint for breach of contract.

> "In favor of [Dickerson and Paradiso] and against [Defendants] on their negligence claim. The jury's award of $675,428.02 is reduced to zero ($0.00) by operation of Code of Civil Procedure sections 877 and 877.6. Additionally, by virtue of [Dickerson's] election of remedy, recovery of the damages awarded pursuant to the jury's negligence findings in special verdict questions 5(a)(b), 6(a)(b), 7(a)(b), 8(a)(b), and 9(a)(b) is waived.

> "In favor of [P&P] and against [Dickerson] on [P&P's] breach of contract claim. As stated above, the jury's award of $535,000.00 to [P&P] is setoff against [Dickerson's] $704,849.00 contractual award by operation of Code of Civil

6

Procedure section 666, leaving [P&P] with an award of zero ($0.00)."

The court also entered judgment for P&P on the implied warranty, fraud, and negligent misrepresentation claims. Both parties appealed.

### III. *First Appeal*

Defendants argued the trial court erred by granting Dickerson's remedy election. Plaintiffs filed a cross-appeal, contending the court erred by ruling P&P substantially complied with licensing requirements. They also argued the jury findings on fraud and negligent representation were irreconcilable, stating this issue was "raised protectively" in case we reversed the judgment.

In our opinion, we concluded the jury findings did not support the remedy election, explaining:

> "Defect damages were *available* in contract, but the jury did not award them and thus did not find Dickerson alone was entitled to such damages based on a contract theory. The jury did award defect damages in negligence, but to Dickerson and Paradiso together—again, making no finding that Dickerson alone was entitled to them. . . . We conclude his election, and the related portions of the judgment, were not supported by the jury findings."

7

We addressed and rejected both of Plaintiffs' cross-appeal arguments. In the respondents' section of their combined brief, Plaintiffs had also stated that "[i]f the judgment were reversed because the trial court did not appropriately reconcile the jury's findings, then a new trial on [Plaintiffs'] damages would be required" and they "would be entitled to a ruling on their motion for correction of settlement allocations . . . and entitled to seek any other appropriate relief from a new judgment." At the end of the opinion, we addressed the parties' disposition requests, including these:

> "Plaintiffs contend that '[i]f the judgment were reversed because the trial court did not appropriately reconcile the jury's findings, then a new trial on Bill [Dickerson] and Paradiso's damages would be required,' and likewise seek posttrial proceedings. We are reversing because the findings do not support Dickerson's remedy election, not because the trial court erred in reconciling them, and we reject the request for a new trial. Further posttrial proceedings may be warranted, but the trial court is in the best position to determine those which are necessary and appropriate."

The disposition stated:

> "The judgment is reversed, in part, and the trial court is directed to deny Dickerson's request for election of remedy and to conduct further posttrial proceedings as the court determines is necessary and appropriate for entry of judgment. In all other respects, the judgment is affirmed. In the interests of justice, the parties are to bear their own costs on appeal."

Plaintiffs filed a petition for rehearing, which we denied. The remittitur issued in 2018.[5]

## IV. *Proceedings On Remand*

On remand, Plaintiffs filed a motion to correct the negligence setoffs. Defendants argued the trial court lacked jurisdiction to revisit the setoffs and in any event Plaintiffs never satisfied the requirement for allocating settlement proceeds. The trial court denied the motion. At the hearing, the court noted the judgment language about "operation of [Code of Civil Procedure sections] 877 and 877.6 [¶] . . . [¶] ha[d] nothing to do with the election of remedies." An attorney for Plaintiffs responded, "But there's no ruling on which that's based," the court asked, "[w]hy would you put it in there?" and the attorney said it was "jointly drafted" and he did not "have a better answer . . . ." The court stated, "I don't disagree with your history. But it says, in the judgment, that that's what happened. . . . I have no recollection of what happened."

In its order, the trial court first found the motion to correct the negligence setoffs was not a motion for reconsideration, because "while the court issued rulings regarding the setoff issue . . . the setoff issue was not conclusively decided" as of the remedy election. The court nonetheless concluded it lacked jurisdiction to address Plaintiffs' motion. After quoting our disposition and the judgment language regarding the negligence award, the court explained:

---

[5]     The parties continued litigating various matters after entry of judgment, including P&P's costs. The trial court granted those costs, Paradiso appealed, and we dismissed the appeal as moot due to our partial reversal of the judgment (May 1, 2018, D071034). We also denied Paradiso's subsequent petition for rehearing.

*"Because the Judgment specifically includes an award of $0.00 on the negligence cause of action 'by operation of' CCP §§ 877 and 877.6, and because the disposition specifically affirms the Judgment in all respects other than the election of remedy, the court finds Plaintiffs' request to correct the CCP §§ 877 and 877.6 offsets is precluded under the principles governing the trial court's jurisdiction on remand as set forth in Ayyad v. Sprint Spectrum, L.P. (2012) 210 Cal.App.4th 851, 859-860 [Ayyad]. Similar to the circumstances in Ayyad, based on the language of the Judgment and disposition, this court is without jurisdiction to entertain Plaintiffs' motion to correct the CCP §§ 877 and 877.6 offsets. Ayyad explains 'the portion of the judgment pertaining to the unaffected issues remains in place and becomes final once the time for appeal passes.' Ayyad, 210 Cal.App.4th at 861 . . . ."*

The court acknowledged Plaintiffs had a pending motion to correct setoffs that was deemed moot when the court granted the remedy election, but found the judgment was dispositive:

> "If the setoff issue had been left unresolved in such a manner, the court would be persuaded that it is 'necessary and appropriate' to resolve the setoff issue for entry of judgment. However, because the Judgment specifically includes an award of $0.00 on the negligence cause of action 'by operation of' CCP §§ 877 and 877.6, and because the disposition specifically affirms this part of the Judgment, the court cannot find that a determination of the CCP §§ 877 and 877.6 setoff is 'necessary and appropriate.' "

The court entered the judgment after remittitur in early 2019. Plaintiffs moved for new trial and JNOV, raising arguments regarding Dickerson's contract claim for defect damages, Dickerson's implied warranty claim, and P&P's contract claim. Defendants opposed both motions based on lack of jurisdiction, and the trial court denied them. Focusing on Dickerson's contract claim, the court found the judgment "identifies the damages as to each alleged construction defect . . . as '0' " [¶]; the " 'all other respects' " disposition language "necessarily includes" the judgment as to this damage

10

award; and the award is "an 'unaffected issue' " under *Ayyad*. The court also rejected Plaintiffs' reliance on the "further posttrial proceedings" language in the prior opinion:

> "[T]his language does not expand the issues on remand to issues of contractual damages for construction defects, but must be read in the context of the disposition which specifically affirms the Judgment in 'all other respects.' This limitation is evident in the rejection of Plaintiffs' request for a new trial by the Court of Appeal."[6]

Plaintiffs appealed from the judgment after remittitur.

DISCUSSION

I. *Appeal from Judgment After Remittitur*

Plaintiffs contend the trial court erred by finding it lacked jurisdiction for their motions on remand, the motions have merit, and we should modify the judgment for Dickerson. We conclude the trial court was right, do not reach the merits, and will not change the judgment.

A. *Applicable Law*

"The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned. 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void." ' " (*Griset v. Fair Political*

---

6     Plaintiffs state the trial court "incorrectly believed Dickerson was still receiving $169,000 awarded pursuant to the original judgment," citing the hearing transcript. The transcript reflects the court understood his final contract recovery was a $160,000 credit against P&P's recovery, notwithstanding its transposition of certain numbers.

11

*Practices Com.* (2001) 25 Cal.4th 688, 701 (*Griset*); *Hampton v. Superior Court of Los Angeles County* (1952) 38 Cal.2d 652, 655 [trial court is "empowered to act only in accordance with the directions of the reviewing court"].)

"[R]emittitur directions are contained in the dispositional language." (*Frankel v. Four Star International, Inc.* (1980) 104 Cal.App.3d 897, 902.) However, "[t]he appellate court need not expressly comment on every matter intended to be covered by the disposition . . . . 'It is unnecessary and inappropriate for an appellate court to attempt to envision and to set forth in detail the entire universe of matters prohibited by its directions on remand.' " (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 313 (*Ducoing*).)

"Whether the trial court correctly interpreted our opinion is an issue of law subject to de novo review." (*Ayyad*, *supra*, 210 Cal.App.4th at p. 859.) "We look to the wording of our directions to determine whether the trial court's order comports with them. [Citation.] When . . . the reviewing court remands the matter for further proceedings, its directions must be read in conjunction with the opinion as a whole." (*Ibid.*)[7]

*Ayyad*, a consumer class action, illustrates these principles. (*Ayyad*, *supra*, 210 Cal.App.4th at p. 854.) In an earlier decision, the disposition stated the "judgment . . . is affirmed," but remanded for "retrial on the issue of [defendant's] damages, and the calculation of any offset to which [defendant] may be entitled." (*Id.* at p. 857.) On remand, the trial court

---

[7]    In reviewing the trial court's interpretation of our remittitur, and its order on prevailing party status *post*, we have considered all points properly raised in the parties' briefs and addressed those pertinent to our analysis.

denied defendant's motion to compel arbitration, finding it lacked jurisdiction to retry other issues. (*Id.* at p. 858.) The Court of Appeal affirmed, explaining that because the judgment was affirmed, "it became final as to the issues unaffected by the new trial order" and "[t]he trial court's jurisdiction did not extend to issues outside the scope of our directions." (*Id.* at pp. 861-862; *id.* at pp. 859-860 [if trial court is not directed "to take a particular action or make a particular determination," it cannot do so].)

B. *Analysis*

   1. *The Trial Court Properly Interpreted the Remittitur*

Relying on the judgment language and our disposition, the trial court concluded its jurisdiction did not extend to Plaintiffs' motions for setoff, new trial, and JNOV. This interpretation was correct.

The judgment set forth the jury's special verdict findings; Dickerson and P&P's contract awards, in light of the remedy election and the contract setoffs; and Plaintiffs' negligence award, including the setoff that reduced it to zero. Our disposition reversed in part, directed the trial court to deny the remedy election, and otherwise affirmed. Our direction to permit "posttrial proceedings . . . necessary and appropriate for entry of judgment" must be read in conjunction with the narrow basis for our partial reversal: denial of the remedy election. (See *Ayyad*, *supra*, 210 Cal.App.4th at p. 859.)

The remedy election denial only had one necessary impact on the judgment: it modified the *amounts* being recovered, by shifting defect damages back to negligence. As a result:

- Dickerson now recovered $160,000 on his breach of contract claim, reduced by P&P's contract recovery of $535,000 to zero.

- P&P now recovered $535,000 on their breach of contract claim, reduced by Dickerson's contract recovery of $160,000 to $375,000.

- A sentence at the end of the negligence award paragraph, stating that "[a]dditionally" Dickerson waived the jury's negligence findings "by virtue of his remedy election" became moot. However, the preceding, operative text still stated the award was "reduced to zero ($0.00) by operation of . . . sections 877 and 877.6," meaning the waiver had already applied to zero dollars of damages.

- There was no change to the judgment on the implied warranty, fraud, or misrepresentation claims.

14

The language allowing appropriate proceedings was likewise tethered to the remedy election denial and, viewed in context, only encompassed matters potentially impacted by the modified award amounts—like P&P's prevailing party motion.

Accordingly, the trial court properly concluded its limited jurisdiction on remand did not extend to Plaintiffs' motions. (See *Griset, supra,* 25 Cal.4th at p. 701; *Ayyad, supra,* 210 Cal.App.4th at pp. 861-862; see, e.g., *MHC Financing Limited Partnership Two v. City of Santee* (2010) 182 Cal.App.4th 1169, 1175, fn. 4 [affirming trial court's rejection of additional challenges to rent control ordinances, following remand and reversal to address remedies]; *Bell v. Farmers Ins. Exchange* (2006) 135 Cal.App.4th 1138, 1142, 1144 (*Bell*) [upholding trial court's ruling that it had no jurisdiction to modify prejudgment interest rate in employment class action, where judgment was reversed for payment of unpaid compensation and modification of distribution plan]; *Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 303-304 [trial court properly declined to hold evidentiary hearing, on remand to vacate one injunction and enter another].)

2. *Plaintiffs' Arguments Lack Merit*

Plaintiffs offer a series of arguments for why, in essence, they get to "try again." They begin by contending the trial court misinterpreted the remittitur. They then assert California law provides them with a right to file posttrial motions after a change in judgment. Next, they claim law of the case did not prevent their motions on remand. Finally, they argue inclusion of the setoff in the judgment was a clerical error the trial court could fix. We address these points in turn, and conclude each lacks merit.

15

### a. *Plaintiffs Do Not Establish the Trial Court Misinterpreted the Remittitur*

Plaintiffs argue the trial court erred in its interpretation by relying on *Ayyad*, because unlike the disposition in that case, our remand directions were broad. This argument mischaracterizes our disposition and we reject it.

With respect to *Ayyad*, Plaintiffs contend the prior appellate decision there affirmed the lower court judgment in all respects except that the disposition provided a "specific directive" for a damages trial and offset calculation on remand. They contend that here, in contrast, a "specific directive was not provided" in the disposition and that we gave the trial court "leeway to conduct further proceedings as deemed 'necessary and appropriate.'" This is not accurate. As in *Ayyad*, we reversed and remanded for a limited reason—reversal of the remedy election, and necessary and appropriate proceedings related thereto—and affirmed "in all other respects." We meant what we said, and we never stated we were granting general "leeway" for further trial proceedings. The trial court's reliance on *Ayyad* was sound.

Plaintiffs also argue our "broad directions were consistent with the limited basis for this Court's reversal," which did not address the "evidentiary record or the legal implications of the jury's findings given the parties' contract." Our reversal *was* limited, and our directions were intentionally *narrow*, not broad. To the extent we did not address other issues, further proceedings on them were foreclosed, not permitted. (*Ayyad*, *supra*, 210 Cal.App.4th at p. 863 [trial court "may not expand the issues on remand . . . merely because the reviewing court has not expressly forbidden the trial court from doing so"]; *Ducoing*, *supra*, 234 Cal.App.4th at p. 313 [unnecessary to address every detail].) For similar reasons, we reject Plaintiffs' assertions that we "reversed the portions of the judgment" that

16

were "impacted" or "affected" by "the election of remedy order" and that the trial court was "specifically not limited by this Court's directions in conducting further proceedings."

   b. *Plaintiffs Do Not Establish They Could File New Motions*

Plaintiffs contend they had a right to file posttrial motions following a change in judgment. As an initial matter, they do not show the relevant portions of the judgment changed. We disagree we "did not affirm the awards on either [sides'] contract claims" and that the "special verdict findings were not 'affirmed,' " as they claim. Instead, to be clear, we affirmed *both* the existence of the contract awards and the special verdict findings when we affirmed the judgment "in all other respects."

Further, the cases Plaintiffs rely upon do not involve remittitur interpretation, and do not aid them. *Bond v. United Railroads of San Francisco* (1915) 169 Cal. 273 (*Bond*) and *Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452 (*Woodcock*) held in pertinent part that when a judgment is vacated and a new judgment is thereafter entered, the time to file for a new trial runs from the latter. (*Bond*, at pp. 274-276 [wrongful death action; in second appeal, reversing order striking notice of motion for new trial from larger judgment on remand]; *Woodcock*, at pp. 459-460 [workplace injury case; reversing with directions to enter judgment with offset, without prejudice to renewal of new trial motion for inadequate damages].) *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720 (*Fassberg*) applied *Woodcock* in crafting its disposition. (*Id.* at p. 753 [construction contract dispute involving reversal in part, including for application of an offset; explaining it was reversing with directions to reduce the award, to allow for a new trial on inadequate damages].)

17

Here, the issue is not the availability of a new trial on remand, in general, but whether the trial court's ability to resolve motions on remand was foreclosed by the scope of a particular, prior appellate disposition and remittitur—an issue these cases did not address. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043 ["cases are not authority for propositions that are not considered"].)[8]

We also reject Plaintiffs' related suggestion that they were unfairly denied the chance to address the issues they tried to raise on remand. We do not see how. Plaintiffs state they were preparing new trial and JNOV motions, but the remedy election rendered them "unnecessary" and their setoff correction motion was deemed moot. Even if the grant of the remedy election foreclosed further posttrial proceedings, it is unclear why Plaintiffs did not make their arguments protectively in the first appeal. Defendants' appeal from the judgment challenged only the remedy election, raising the possibility that we would reverse the election and otherwise affirm—as we did. Plaintiffs filed a cross-appeal, but addressed only P&P's licensing compliance and one protective issue regarding the alleged inconsistency of the fraud and misrepresentation verdicts. They could have raised others.

We recognize Plaintiffs made what they call a "contingent request for new trial" in the respondents' portion of their combined brief. They sought further proceedings, if we reversed because the trial court failed to

_____

8      The earlier opinion in *Bond* addressed new trial proceedings in its disposition, but the later opinion did not discuss this language or focus on trial court jurisdiction. (See *Bond v. United Railroads of San Francisco* (1911) 159 Cal. 270, 287 [disposition was "without prejudice to any pending motion of the defendant for a new trial, or to the right of the defendant, if any it has, to move thereafter for a new trial"]; *Bond, supra*, 169 Cal. at pp. 274-277.) *Woodcock* and *Fassberg* did not involve prior appeals.

appropriately reconcile the contract and negligence verdicts, and said elsewhere in that part of their brief that these verdicts were not consistent. But Defendants' position was that the contract and negligence verdicts *were* consistent, and it was the remedy election that was the problem—thus we did not need to address the consistency or reconciliation of these verdicts, and did not do so. Moreover, given established appellate burdens, Plaintiffs' passing request for a new trial was insufficient to obtain affirmative relief. (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 587 [absent cross-appeal, respondent cannot challenge different portions of judgment]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [if party " ' "fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived" ' "].) The fact that we confirmed we were reversing because of the remedy election, in rejecting the request, also did not mean it remained open for discussion on remand.

> c. *Law of the Case Is Not at Issue*

Plaintiffs contend the trial court "incorrectly believed" our rejection of their contingent new trial request was law of the case. The court denied their motions because of the law governing remittitur, not law of the case, and they identify nothing in the record to suggest otherwise.

Nor would the absence of law of the case entitle them to anything on remand. The law of the case doctrine provides that where a reviewing court " ' "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress. . . ." ' " (*People v. Stanley* (1995) 10 Cal.4th 764, 786.) But the "terms of the remittitur define the trial court's jurisdiction, not law of the case. The force of the remittitur does not depend on, nor is it limited by the law of the case." (*People v. Dutra* (2006) 145

19

Cal.App.4th 1359, 1367.) Further, law of the case is meant to discourage, not facilitate, piecemeal litigation. (See *Fogel v. Chestnutt* (2d Cir. 1981) 668 F.2d 100, 109 ["It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost"]; cf. *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 312, disapproved on other grounds in *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637 ["Litigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court"].)

### d. *Plaintiffs Do Not Establish the Setoff Was Clerical Error*

Plaintiffs contend the portion of the judgment addressing the negligence setoffs was a clerical error, which the trial court could correct. Not so.

" 'The test which distinguishes clerical error from possible judicial error is simply whether the challenged portion of the judgment was entered inadvertently (which is clerical error) versus advertently (which might be judicial error, but is not clerical error). [Citation.] Unless the challenged portion of the judgment was entered inadvertently, it cannot be changed post judgment under the guise of correction of clerical error.' " (*Bell*, *supra*, 135 Cal.App.4th at p. 1144.)

According to Plaintiffs, the judgment "inadvertently" indicated the trial court issued an order on the setoffs, even though no order was entered and the court ruled without prejudice. But the trial court *did* rule on the setoffs, it entered a judgment including that ruling, and Plaintiffs do not establish this inclusion was a mistake. (See *Bell*, *supra*, 135 Cal.App.4th at p. 1144 [disagreeing trial court had "power to amend the prejudgment interest rate provided in the judgment as a clerical error" on remand, where record

20

disclosed no "inadvertent error," among other reasons].)  As for the court's willingness to revisit the setoffs, the court acknowledged the numbers could change *if* Plaintiffs established allocations.  But the court also stated, "[l]et's go forward assuming there wasn't [any allocation]," and then entered the judgment with the existing setoff—implying the ruling was sufficiently final in the court's view to do so.

### 2. *We Do Not Address Plaintiffs' Motions or Judgment Requests*

Having concluded the trial court properly interpreted our disposition in declining to rule on Plaintiffs' motions, we do not reach the merits of those motions.  We also have rejected Plaintiffs' attempt to characterize the negligence setoff as a clerical error.  Accordingly, we reject Plaintiffs' requests to modify the judgment for Dickerson or remand for a new trial, and we will affirm.

### II. *Appeals from the Prevailing Party Determination*

P&P argues the trial court abused its discretion by denying them prevailing party status under Civil Code section 1717, while Dickerson argues the court erred by denying his evidentiary objections.[9]  We conclude neither argument has merit, and affirm the trial court's order.

### A. *Additional Facts*

During the home construction, Dickerson came to believe P&P was overcharging, requested additional documentation, and stopped making payments in late 2008.  P&P consulted with attorney Leo Beus.  He responded to Dickerson in or around February 2009, and notified him that he owed additional amounts.  Dickerson filed suit in April 2009, and P&P's cross-complaint followed.  The operative cross-complaint alleged Dickerson

---

[9]    Further statutory references are to the Civil Code, unless noted.

breached the contract by failing to pay "costs," "fees," and "cost escalations, extended overhead, and delay damages," and sought damages exceeding $1 million with interest.

P&P's prevailing party motion sought $4,928,699.75 in attorney fees. P&P argued, in substance, that their primary objective was to limit Dickerson's contract claim as reflected in his $4,264,000 trial demand, while their contract claim of $1,354,258.81 was a secondary objective, and they achieved their goals. Dickerson opposed the motion, contending, in part, that he made settlement offers to P&P for lower amounts. He provided evidence of section 998 offers of $30,000 on the cross-complaint in early 2011 and $980,000 on all claims later in 2011, as well as an informal offer of $840,000 (or up to policy limits) for the entire case in 2013. He also filed objections to declarations filed by P&P, which we discuss *post*.

The trial court heard P&P's motion in July 2019 and ruled there was no prevailing party under section 1717. In its order, the court quoted the portions of the judgment after remittitur that reflected the parties' contract recoveries, including Dickerson's $160,000 credit. The court stated *Hsu v. Abbara* (1995) 9 Cal.4th 863 (*Hsu*) set forth the applicable analysis, and explained:

> "[B]oth [Dickerson] and P&P recovered on their respective
> contract claims, but the amount of their respective recoveries
> was reduced based on the other's recovery. Given this 'mixed'
> result, under *Hsu*, the court considers the arguments and
> evidence at trial and compares 'the extent to which each party
> ha[s] succeeded and failed to succeed in its contentions' and
> finds that neither party obtained its primary litigation
> objective on the contract claims—P&P did not completely
> defeat [Dickerson's] breach of contract claim and recovered
> only $375,000 of the $1,354.258.81 sought on its cross-
> complaint breach of contract claim. [Dickerson] recovered on
> his breach of contract claim (thereby reducing [his] liability on

22

P&P's breach of contract claim) but [he] recovered significantly less than the $4,264,000 initially sought."

The court then described Dickerson's settlement offers, and stated: "The court compares Plaintiff's recovery of $0 on a $980,000.00[ ] claim . . . with P&P's recovery of $375,000.00 on a $1,354,258.81 claim . . . . Based on this comparison, both sides' recoveries were approximately $980,000.00 less than what was sought."

The trial court further stated that, "[a]lthough not dispositive," it considered the jury verdict for Dickerson's contract claim of "$707,849.00, offset/reduced by P&P's recovery of $535,000.00 on its cross-complaint contract claim for a total award of $169,849.00"—seemingly referencing his contract recovery after the remedy election, but prior to the first appeal. The court also distinguished P&P's authorities, and overruled Dickerson's evidentiary objections. Both parties appealed.

B. *Applicable Law*

Under section 1717, the prevailing party in an action to enforce a contract is entitled to reasonable attorney fees when the contract provides for such award. (§ 1717, subd. (a).) It is the role of the trial court to "determine who is the party prevailing on the contract for purposes of this section . . . ." (§ 1717, subd (b)(1).) A party who obtains a " 'simple, unqualified win' " on the contract is entitled to recover attorney fees. (*Hsu, supra,* 9 Cal.4th 863, 877.) But "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine . . . neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)

"[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives

as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Hsu, supra*, 9 Cal.4th at p. 876.) "[I]n determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' " (*Id.* at p. 877, italics omitted.)

We apply abuse of discretion review. "The trial court exercises a particularly 'wide discretion' in determining who, if anyone, is the prevailing party for purposes of section 1717 . . . . To overturn that determination on appeal, the objecting party must demonstrate 'a clear abuse of discretion.' " (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894.) The ruling " 'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.' " (*Ibid.*)

C. *Analysis*

1. *The Prevailing Party Ruling Was Not an Abuse of Discretion*

The trial court determined there was no prevailing party, because the results were mixed and neither side achieved their primary objective. P&P contends this ruling was an abuse of its discretion. We disagree.

The flawed premise of P&P's position is that one must carry out the prevailing party analysis based on "arithmetical reality," which in their view meant Dickerson sought the amount of his trial demand; P&P's litigation objective was defeating that demand, as their claim was smaller; and P&P clearly achieved greater relief. As we will explain, this mechanical approach is misguided, and P&P's related suggestion that the trial court erred by not using it lacks force. We then address why the court reasonably found

24

Dickerson's objective was lower than his trial demand, and P&P's objective included prevailing on their breach of contract claim. Finally, we conclude the record reflects the results were indeed mixed, and the court did not abuse its discretion by denying prevailing party status.

a. *The Prevailing Party Analysis Is Not Mechanical*

P&P urges us to focus on certain numbers, including amounts sought and percentage recoveries, and suggests the trial court erred in applying *Hsu* and another case, *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287 (*de la Cuesta*).

But, "there is more to section 1717 than a merely mechanical determination." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1154 (*Sears*).) The prevailing party determination turns on which party achieves "greater relief," which implicates equitable considerations, not just monetary recovery. (§ 1717, subd. (b); *Hsu, supra*, 9 Cal.4th at p. 876; *Sears*, at p. 1151 [term "greater relief" includes " '[s]uperior in quality' "]; cf. *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1335, fn. 3 (*Goodman*) [declining to construe Code Civ. Proc., § 1032, which turns on "net monetary recovery" in light of § 1717, because the latter involves "greater relief"].) And, further, these considerations are left to the trial court's "broad discretion." (*Jackson v. Homeowners Assn. Monte Vista Estates-East* (2001) 93 Cal.App.4th 773, 788 (*Jackson*).) The trial court here, which has presided over the case for more than a decade, was "in the best position to determine the degree to which either party succeeded at trial." (See *Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 829, fn. 15 (*Olive*).)

In turn, the trial court properly applied the standards articulated in *Hsu* and utilized in *de la Cuesta* when it determined there was no prevailing party. The cases themselves are distinguishable. *Hsu* involved a "simple,

unqualified win," not mixed results. (*Hsu*, *supra*, 9 Cal.4th at pp. 876-877 [reversing denial of fees in residential real estate dispute; defendants "successfully defended the only contract claim in their litigation"].) *de la Cuesta* was a mixed results case, but with results "*so* lopsided" that the trial court abused its discretion by denying prevailing party status. (*de la Cuesta*, *supra*, 193 Cal.App.4th at p. 1290; *id.* at p. 1299 [landlord "clearly" achieved " 'greater' part of its two litigation objectives," repossession and about 70% of back rent sought, whereas tenant had claimed she owed nothing and vacated].) Yet, despite reversing the trial court, the Court of Appeal in *de la Cuesta* still declined to adopt "a one-size-fits-all rule." (*Id.* at p. 1296 [discretion clause was in § 1717 "to allow trial courts to take into account the unique facts and circumstances of each case"].) The trial court here properly applied the law to the record, as we will now explain.

> b. *The Trial Court's Determination of Dickerson's Objective Was Reasonable*

P&P contends the trial court erroneously characterized Dickerson's objective as an amount below his trial demand. The record supports the trial court's determination of his objective.

Dickerson was pursuing multiple grounds for damages, through multiple, overlapping causes of action. Some damages sought at trial were not available in contract, including $478,947.75 for the seawall and amounts for work by James Papenhausen II doing business as Papenhausen Construction. Further, as the trial court recognized, Dickerson's demand could also reflect his "wildest dreams" or his counsel's strategy. (See *Sukut-Coulson, Inc. v. Allied Canon Co.* (1978) 85 Cal.App.3d 648, 656 [affirming fees for plaintiff, even though it did not recover amount stated in complaint; defendants were not prevailing parties under § 1717 "merely because the plaintiff's recovery did not correspond to its wildest dreams"]; *de la Cuesta*,

26

*supra*, 193 Cal.App.4th at p. 1296 [prevailing landlord sought $103,000 "at his most exuberant," and received $70,000]; *id.* at fn. 5 [noting "complete victory" is not dispositive, and describing counsel's dilemma: "Risk a malpractice suit by not asserting maximal claims, or risk a malpractice suit by forfeiting 'prevailing party' status . . . by asserting maximal claims"].)

We therefore disagree with P&P that "nothing substantive" in the record reflects Dickerson's litigation objective was lower than his trial demand. We note P&P's failure to set forth all material evidence on the issue, such as the unavailability of certain amounts in contract, would be fatal to their argument regardless. (Cf. *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [substantial evidence challenge must "set forth . . . all the material evidence" or "the error is deemed to be waived"].) Their reliance on facts they view as helpful to them—the trial length, Dickerson's use of numerous experts, and his closing arguments—is unavailing.

P&P also does not establish reversible error based on the trial court's consideration of Dickerson's settlement offers. (See *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191, 204 [declining to consider settlement communications, stating they are not comparable to the " 'pleadings, trial briefs, [and] opening statements' " cited in *Hsu*].) We "do not review the trial court's reasoning, but rather its ruling." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15; cf. *Day v. Alta Bates Medical Ctr.* (2002) 98 Cal.App.4th 243, 252, fn. 1 [reviewing court may affirm " 'on any basis presented by the record' "].) We need not and do not decide whether the court erred in considering the settlement offers, because its conclusion that

Dickerson's litigation objective was less than his trial demand was supported by the record, regardless of the offers.[10]

### c. *The Trial Court's Determination of P&P's Objective Was Reasonable*

P&P argues the court failed to appreciate that defense of Dickerson's claim was their central litigation objective. They reason that in a high-stakes case, defense is "superior" to a counterclaim of lower value, and because their claim was less than Dickerson's, defense was their main goal. The trial court reasonably could find P&P's objective included prevailing on their cross-complaint, and reject their arguments to the contrary.

P&P sought $1,354,258.81 based on Dickerson's alleged failure to pay certain amounts in costs and fees, not just offsets to Dickerson's claimed damages. (See *Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 368-369 [rejecting producer's argument that it prevailed in dispute with author because its cross-complaint was " 'defensive' "; producer "did not simply argue that [author's] alleged damages should be set off," but rather "sought millions of dollars"]; *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 440 [affirming denial of prevailing party status to defendant who claimed cross-complaint was "essentially defensive," where it "sought monetary damages unrelated to the complaint, expanded discovery

10    Given our conclusion, we do not address P&P's further point that, even if the trial court could consider Dickerson's settlement offers as evidence of his litigation objective, it applied a "false equivalence" by using P&P's trial demand for their goal, rather than Dickerson's offer on the cross-complaint. We note P&P cites no authority that an *opponent's* view of a litigant's goal is relevant. Additionally, P&P elsewhere asserts another error; namely, that the trial court improperly considered Dickerson's post-remedy election recovery. As we will explain, the record supports the court's findings on the parties' results too, and we do not reach that purported error, either.

28

and led to substantial briefing"].)  Further, the record reflects P&P's counsel began claiming Dickerson owed more money under the home construction contract as early as February 2009—*before* he filed suit in April 2009. (*Cussler*, at p. 368 [prior to author suing, producer "hired litigation counsel and accused [author] of breaching the contract"].)  The trial court was not required to accept P&P's claim that their objective had been primarily defensive.  (See *Hsu*, *supra*, 9 Cal.4th at p. 875, fn. 10 [where there are cross-actions and no recovery, "if" the court finds defendant's action is essentially defensive, it "may" find defendant prevailed].)

P&P contends *Goodman*, *supra*, 47 Cal.4th 1327, and *Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533 illustrate their primary litigation objective *must* have been defensive.  But neither turned on disputed litigation objectives, and they are otherwise distinguishable.  *Goodman* affirmed a Code of Civil Procedure section 1032 prevailing party ruling for construction defect defendants who achieved their undisputed goal of keeping damages below plaintiffs' prior settlements; this result, the Court held, meant plaintiffs did not have a net monetary recovery under section 1032.  (*Goodman*, at pp. 1330, 1339.)  Here, the defendant's goal for purposes of section 1717 is at issue, and section 1032 is not.  In *Silver Creek*, the Court of Appeal reversed the denial of section 1717 prevailing party status for a plaintiff who secured a declaration that it validly terminated large real estate contracts, while the defendant's cross-complaint resulted only in return of its deposit.  (*Silver Creek*, at p. 1537.)  The trial court erred because, although it recognized the plaintiff's claim was "most important" to both sides, it oversimplified the analysis by "counting the number of contract claims . . . and essentially declaring a tie."  (*Id.* at

29

p. 1540.) In contrast, the trial court here reasonably found the parties' objectives included prevailing on their respective claims, and properly compared their results.

### d. *The Trial Court Reasonably Determined Neither Party Achieved Their Objective*

Finally, P&P maintains they achieved their objective by defeating Dickerson's claim and partially recovering on their own, while he recovered a "mere 3.7%" and thus failed to achieve his objective. This argument turns on P&P's mechanical approach, and our rejection of that approach disposes of the argument.

Focusing on substance over form, as we must, the record reflects the results here were indeed mixed. (See *Hsu*, *supra*, 9 Cal.4th at p. 877.) The jury awarded Dickerson $160,000 for delays and overcharges on his contract claim (which he received as a credit against P&P's contract recovery), and awarded P&P $535,000 on their contract claim (which was reduced by the $160,000 to $375,000). Each party thus established contract liability by the other, but recovered only some of the damages sought, and neither fully defeated the other's claim. Further, a large portion of Dickerson's damages were for construction defects, which he and Paradiso pursued, and proved, in their negligence claim. Although the prevailing party determination does not involve noncontract claims, it is guided by equitable considerations. (*Hsu*, at pp. 873-874, 877.) And equity does not permit what P&P appears to urge: viewing the defects as part of Dickerson's trial demand, to magnify his supposed failure, while ignoring his success in proving P&P was liable for the defects. Ultimately, these results were not so lopsided that there was a clear winner. (Cf. *de la Cuesta*, *supra*, 193 Cal.App.4th at pp. 1290, 1299.)

30

On this record, we conclude the trial court did not abuse its discretion in finding there was no prevailing party. This outcome is consistent with other mixed results cases. (See *Marina Pacifica, supra*, 20 Cal.App.5th at pp. 206-207 [trial court did not abuse its discretion by declining to find defendant assignee was the prevailing party in a dispute with a condominium association, where it received 40 percent of its claimed damages]; cf. *Olive, supra*, 30 Cal.App.5th at pp. 827-828 [applying *Hsu* to fees under Civ. Code, § 3344, and affirming there was no prevailing party; model won over $1.1 million in suit against advertiser, but sought much more, and advertiser had tried to limit damages to the thousands]; *Jackson, supra*, 93 Cal.App.4th at pp. 788-789 [affirming prevailing party status for homeowners who secured removal of rental ban they contested and a $2,500 settlement, even though homeowners' association avoided injunctive relief and the payment was nominal, noting the "substantial arguments" for each side and trial court's "broad discretion"].)[11]

### 2. *The Trial Court's Evidentiary Rulings Were Not an Abuse of Discretion*

---

[11] We briefly dispense with two remaining issues. P&P argues the trial court "labored to, and did, inappropriately engineer a no prevailing party outcome." But P&P does not show the court was biased, and we presume it properly carried out its duties. (Evid. Code, § 664; *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 400.) The parties also blame each other for questionable tactics and motives. Such accusations have no place in the analysis. (*Hsu, supra*, 9 Cal.4th at p. 877 [courts generally "may not invoke equitable considerations unrelated to litigation success, such as . . . behavior during settlement negotiations"]; *Silver Creek, supra*, 173 Cal.App.4th at p. 1540 [*Hsu* "cautioned against examining . . . litigation tactics"].) The trial court properly focused on the parties' objectives and results, and so do we.

31

Dickerson brings a protective cross-appeal in the event we reverse the prevailing party order, contending the trial court erred by overruling his evidentiary objections. Although we affirm the order, we address this argument in the interest of finality and reject it.

P&P filed attorney declarations with their prevailing party motion, including from litigation counsel Sean Schwerdtfeger and insurance counsel Vik Nagpal. According to P&P, the declarations "detail[ed] the amount of the [fee] award sought" and explained "how and why" the fees were incurred. Dickerson objected to statements by Schwerdtfeger, including that Plaintiffs pursued their claims with "extreme vigor" and put defendants at risk of nondischargeable liability for fraud. He also objected to Nagpal's statement that there was no "meaningful effort to resolve the claims" against P&P, as Dickerson's pretrial demand was for claims under the policy and left uncovered claims like punitive damages for trial. The trial court summarily denied the objections.

We review evidentiary rulings for prejudicial abuse of discretion. (See, Evid. Code, § 353; *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) Dickerson establishes neither error, nor prejudice. He contends fraud and punitive damages did not involve relief on the contract, and the statements were thus irrelevant to the prevailing party analysis. But the trial court impliedly could find the statements potentially relevant to the amount of the fee request. (See *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1167.) Further, Dickerson appears to acknowledge the ruling did not prejudice him, and on this record we do not see how it could. Whatever purpose the court envisioned for the statements at issue, there is no indication it relied upon them in making its prevailing party determination.

32

We conclude the trial court did not abuse its discretion by determining there was no prevailing party or by overruling Dickerson's evidentiary objections.

## DISPOSITION

The judgment after remittitur and order on prevailing party determination are affirmed.  The parties are to bear their own costs on appeal.

IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


GUERRERO, J.